Reeves v Associated Newspapers, Ltd. (2024 NY Slip Op 04286)

Reeves v Associated Newspapers, Ltd.

2024 NY Slip Op 04286

Decided on August 22, 2024

Appellate Division, First Department

Gonzalez, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 22, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Jeffrey K. Oing Ellen Gesmer Lizbeth González Bahaati E. Pitt-Burke

Index No. 154855/20 Appeal No. 504 Case No. 2021-03446 

[*1]Karl Reeves, C.E.I.N.Y. Corp., et al., Plaintiffs-Appellants-Respondents,
v
Associated Newspapers, Ltd., et al., Defendants-Respondents-Appellants, Mail Media Inc., et al., Defendants.

Plaintiffs appeal and certain defendants cross-appeal from the order 0f the Supreme Court, New York County (Phillip Hom, J.), entered on or about August 5, 2021, which granted defendants Associated Newspapers Ltd. and Anneta Konstantinides's motion to dismiss the complaint, pursuant to CPLR 3211(a)(1) and (7), declined to apply New York's SLAPP Statue and denied defendant's request for attorneys' fees.

Law Offices of John V. Golaszewski, P.C., New York (John V. Golaszewski of counsel), and Hantman & Associates, New York (Robert Hantman of counsel), for appellants-respondents.
Davis Wright Tremaine LLP, New York (Robert D. Balin, Amanda B. Levine and Kelli L. Sager of the Bar of the State of California, admitted pro hac vice, of counsel), for respondents-appellants.

Gonzalez, J. 

A SLAPP suit, typically sounding in defamation, is brought to intimidate or silence a person who has spoken out about a matter of public interest (see 600 W. 115th St. Corp. v Von Gutfeld, 80 NY2d 130, 137 [1992], cert denied 508 US 910 [1993]; Aristocrat Plastic Surgery, P.C. v Silva, 206 AD3d 26, 28 [1st Dept 2022]). The anti-SLAPP law (see Civil Rights Law §§ 70-a, 76-a; CPLR 3211[g]-[h]) is designed to deter "strategic lawsuits against public participation" and thereby protect the free exercise of speech, petition and association (L 1992, ch 767, § 1).
To this end, the anti-SLAPP law creates an accelerated summary dismissal procedure, which applies when a defendant in a SLAPP suit moves pursuant to CPLR 3211(a)(7) to dismiss the complaint. Upon such a motion, the defendant bears the initial burden of showing that the action or claim is a SLAPP suit (see CPLR 3211[g][1]). Once the defendant makes that showing, the burden shifts to the plaintiff to demonstrate that the claim has a "substantial basis in law" (id.). If the claim is dismissed, the defendant recovers a mandatory award of attorneys' fees.
This case presents the issue of what constitutes a "substantial basis in law" under the anti-SLAPP law. We hold, based on our reading of CPLR 3211(g) and (h), that "substantial basis" under the anti-SLAPP law means "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Smartmatic USA Corp. v Fox Corp., 213 AD3d 512, 512 [1st Dept 2023] [internal quotation marks omitted]), a phrase drawn from the relevant legislative history. We further find that, because the complaint in this case fails to survive ordinary CPLR 3211(a)(7) analysis, plaintiffs have failed to meet the higher burden under CPLR 3211(g) of showing that their SLAPP suit has a substantial basis in law. Accordingly, defendants — a media entity and a reporter — are entitled to mandatory costs and attorneys' fees pursuant to Civil Rights Law § 70-a. We remand the case solely for calculation of those costs and fees.
I. Facts and Procedural History
This case arises from the contentious divorce and custody dispute between plaintiff Karl Reeves (Karl), Chief Executive [*2]Officer of plaintiffs CEINY Corp., Consolidated Elevator Industries, Inc., and Consolidated Elevator Service Corp. (collectively Consolidated), and his estranged wife Julianne Michelle Reeves (Michelle). In the year leading up to Michelle's divorce filing in 2017, Karl was arrested on five occasions, and variously charged with assault, endangering the welfare of a child, criminal possession of controlled substance, and aggravated assault. All charges were eventually dismissed as part of a plea agreement. During the custody dispute, The Foundation for Child Victims of Family Court (FCVFC), an organization that aims to assist parties in custody disagreements, filed a series of ethics complaints on Michelle's behalf against the judge presiding over the custody litigation, a legal aid attorney, social workers, and caseworkers. FCVFC alleged that each of the named parties biased the custody proceeding in Karl's favor by actively hiding or ignoring Karl's harmful behavior, including his death threats to Michelle's family, his self-description as a proud Neo Nazi, and the "fact" that he was a "substantiated drug abuser." In January 2019, Karl filed a defamation action against Michelle, Michelle's mother, FCVFC, and an FCVFC representative. Five months later, in May 2019, Karl discontinued the action against Michelle and her mother.
In July 2019, defendant Associated Newspapers Ltd. (ANL) doing business as Mail Online and The Daily Mail published a story on its online site written by defendant Anneta Konstantinides, with the title "Seriously, I'll kill both of them: NY socialite and actress is locked in vicious custody battle with 'racist ketamine-snorting millionaire' CEO husband after he accused her of Pornhub fame and threatened to kill her parents." Before the story was posted, Konstantinides reached out to Karl with a request for comment and informed him that the article would contain threatening text messages from Karl, audio and video footage of Karl taking drugs, and audio of Karl using racist and abusive language. Karl warned ANL that publishing the story would defame him and his businesses. Karl's attorneys wrote to The Daily Mail and cautioned that the story was false and part of a scheme by Michelle to defame Karl. ANL published the story anyway. On two separate occasions, after publication, Karl's attorneys demanded retractions. ANL did not oblige.
Karl and Consolidated commenced the instant lawsuit, alleging six causes of action: defamation, intentional infliction of emotion distress, negligent infliction of emotional distress, tortious interference with contract, tortious interference with prospective business relationships, and prima facie tort. The complaint identified 12 purported defamatory statements, all of which were published on the defendants' website as part of the July 2019 article. Plaintiffs alleged that the statements were defamatory and that they were negligently and/or knowingly made with malice and with the intent to cause [*3]emotional distress and financial harm to Karl's businesses.
Defendants moved in lieu of answering pursuant to CPLR 3211(a)(1), (a)(7), and (g). With regard to the defamation claim, defendants argued that eight of the statements in the complaint were protected statements under the fair report privilege (see Civil Rights Law § 74) because they accurately reported on court proceedings and records, including the defamation suit Karl had filed against Michelle and Karl's arrest record. Defendants argued that four of the statements were substantially true and excerpted from text messages sent by Karl, as well as audio and video recordings of Karl. Lastly, defendants argued that the headline was a fair index of the article. Defendants maintained that the tort claims were merely "tag along" claims duplicative of the defamation claim and without merit.
Defendants further argued that they were entitled to attorneys' fees under the newly amended anti-SLAPP law (see Civil Rights Law § 70-a[1]). Defendants asserted that the statute's broad "public interest" requirement was easily satisfied because the case involved a public defamation lawsuit which arose from a divorce that included allegations of spousal abuse inflicted upon an actress and member of a prominent New York family, as well as the resolution of criminal proceedings against Karl.
In opposition, plaintiffs argued that the anti-SLAPP law was inapplicable to their lawsuit, because neither Karl nor Michelle are public figures, and their divorce and custody disputes are matters of private concern. Plaintiffs maintained that the recent amendments to the anti-SLAPP law lacked retroactivity. Notably, plaintiffs did not request any of the special discovery made available under the anti-SLAPP law to aid them in showing that their claim had a "substantial basis" (see CPLR 3211[g][3]). Similarly, plaintiffs made no arguments tailored to CPLR 3211(g).
The motion court granted defendants' motion to dismiss in its entirety. The motion court found that none of the alleged defamatory statements were actionable because they were protected by the fair report privilege. It further held that the disputed statements were substantially true statements extracted from text messages sent by Karl, which he never denied sending, and from audio and video recordings. Therefore, these statements could not form the basis of a defamation claim. The motion court thus found that the tort claims were legally deficient on their face.
In denying defendants' counterclaim for attorneys' fees pursuant to Civil Rights Law § 70-a(1) under the newly amended anti-SLAPP law, the motion court made four observations: (1) it need not address whether the new version of the anti-SLAPP law applied retroactively because the complaint was filed before the amendment was enacted; (2) it found that, even if the action fell within the scope of the amendment, an attorneys' fees award was not mandatory; (3) it reasoned that it need not reach defendants' [*4]attorneys' fees arguments because it had dismissed the complaint under CPLR 3211(a)(1) and (a)(7); and (4) it determined that "[t]his action was commenced under a cognizable legal theory, and although this [c]ourt found plaintiffs' arguments unpersuasive, the action was not frivolous."
II. Analysis
A. Plaintiffs' Claims
The motion court correctly determined that the alleged defamatory statements published by defendants in an online news article reporting on the contentious divorce and child custody battle between Karl and Michelle were privileged under Civil Rights Law § 74. Additionally, some statements, including those set forth in paragraph 43(h) and (l) of the complaint, were substantially true based on text messages and audio and video recordings (see Chinese Consol. Benevolent Assn. v Tsang, 254 AD2d 222, 223 [1st Dept 1998]). Karl did not dispute either the accuracy of these statements or the authenticity of the recordings in his opposition affidavit (see id.). The headline was a fair summary of the article's substantially accurate contents (see Gunduz v New York Post Co., 188 AD2d 294, 294 [1st Dept 1992]).
Turning first to the tort claims, Karl's claims for negligent and intentional infliction of emotional distress were correctly dismissed as duplicative of his defamation claims (see Fleischer v NYP Holdings, Inc., 104 AD3d 536, 538-539 [1st Dept 2013], lv denied 21 NY3d 858 [2013]; Akpinar v Moran, 83 AD3d 458, 459 [1st Dept 2011], lv denied 17 NY3d 707 [2011]). Defendants' alleged conduct did not amount to extreme and outrageous conduct (see Seymour v Hovnanian, 211 AD3d 549, 557 [1st Dept 2022]; Parker v Trustees of the Spence Sch., Inc., 205 AD3d 459, 460 [1st Dept 2022]). Karl's cause of action for prima facie tort was also duplicative of the defamation claim (Fleischer, 104 AD3d at 538-539; Matthaus v Hadjedj, 148 AD3d 425, 426 [1st Dept 2017]). The prima facie tort claim, insofar as asserted by Consolidated, fails because the basis of the tort, the alleged defamatory statements made about its CEO, were not "of and concerning" Consolidated (Three Amigos SJL Rest., Inc. v CBS News Inc., 28 NY3d 82 , 86-87 [2016]; see also Cohn v National Broadcasting Co., 67 AD2d 140, 146 [1st Dept 1979], affd 50 NY2d 885 [1980], cert denied 449 US 1022 [1980]). Consolidated's claims for tortious interference with contract and prospective economic advantage failed on their face, as the complaint did not plead the requisite elements, including defendants' knowledge of its business relationships and/or contracts with third parties (see Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1996]; Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 47 [1st Dept 2009], lv dismissed in part, denied in part 14 NY3d 736 [2010]).
Hence, Supreme Court properly concluded that plaintiffs fail to state a claim under CPLR 3211(a).
B. Attorneys' Fees Under the Anti-SLAPP Law
We turn to defendants' counterclaim for attorneys' fees under the anti-SLAPP law (see [*5]Civil Rights Law § 70-a[1]).
1. History and Construction of the Anti-SLAPP Law
The anti-SLAPP law was first enacted in 1992. The Legislature expressly declared it to be "the policy of the state that the rights of citizens to participate freely in the public process must be safeguarded with great diligence" (L 1992, ch 767, § 1). The Legislature emphasized that New York "must provide the utmost protection for the free exercise of speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern" (id.). These concerns underpin the amendments that later fortified the anti-SLAPP law in November 2020 (see Sponsor's Mem, L 2020, ch 250, Bill Jacket, at 5-6).
The anti-SLAPP law contains three primary components. Its scope is initially set forth in Civil Rights Law § 76-a, which delineates the types of public petition and participation that are protected by the law. Civil Rights Law § 70-a affords remedies to protected persons, in the form of attorneys' fees and compensatory and punitive damages. CPLR 3211(g) and CPLR 3212(h) establish a new standard designed to ensure that baseless SLAPP suits do not advance beyond the pleadings.[FN1]
These two CPLR subsections flip the burden of proof ordinarily applied in CPLR 3211(a)(7) motions to dismiss or CPLR 3212 motions for summary judgment: once the movant establishes that the plaintiff's action is a SLAPP suit, the motion to dismiss "shall" be granted unless the plaintiff demonstrates that the cause of action has a substantial basis.
As originally enacted, the anti-SLAPP law was found applicable only to a narrow class of cases (see Mark C. Dillon, McKinney's Cons Laws of NY, CPLR 3212, Practice Commentary C3212:54 [2021]) brought by "public applicant[s] or permittee[s] (former CLR § 76-a[1]; see Hariri v Amper, 51 AD3d 146, 151 [1st Dept 2008]). Moreover, the law's original attorneys' fees provision was discretionary (see former Civil Rights Law § 70-a[1][a]), so that few parties who succeeded in defeating SLAPP suits recovered attorneys' fees (see e.g. Matter of West Branch Conservation Assn. v Planning Bd. of Town of Clarkstown, 222 AD2d 513, 515 [2d Dept 1995]).
On November 10, 2020, the Legislature strengthened the remedies available to victims of SLAPP suits (see L 2020, ch 250). The 2020 amendments expanded the scope of anti-SLAPP protection to encompass claims based on "(1) any communication in a place open to the public or a public forum in connection with an issue of public interest" or "(2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition" (Civil Rights Law § 76-a[1][a][1]-[2]). The amendments further directed that "public interest" shall be "construed broadly" to mean "any subject other than a purely private matter" (Civil Rights Law § 76-a[1][d]).
The [*6]2020 iteration of the anti-SLAPP law codified a protected person's right to recover attorneys' fees by making an award of attorneys' fees mandatory, not discretionary, upon a showing that the SLAPP action "was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law" (Civil Rights Law § 70-a[1][a]).[FN2]
An adjudication under CPLR 3211(g) or 3212(h) that is favorable to a defendant is sufficient to support such a showing (see id.).
Finally, the amendments overhauled the expedited dismissal procedure set forth in CPLR 3211(g). In addition to CPLR 3211(g)(1) (which existed prior to the 2020 amendments), the amendments added three entirely new subsections (see CPLR 3211[g][2]-[4]). These provisions created a new evidentiary framework, which is, in effect, an accelerated summary judgment procedure under CPLR 3211(a)(7).[FN3]

Simply put, the 2020 amendments expanded the scope of anti-SLAPP protections to encompass all public communications on any nonprivate matter (see Civil Rights Law § 76-a[1]). The amendments simplified a defendant's burden. On a CPLR 3211(a)(7) motion to dismiss, the defendant bears the burden of showing that the action or claim is a SLAPP suit. Once the defendant satisfies this initial burden, the burden shifts to the plaintiff to demonstrate that its claim has a substantial basis (CPLR 3211[g][1]). If the plaintiff fails to meet that burden, then the covered action or claim is dismissed, with a concomitant mandatory award of attorneys' fees to the prevailing defendant (see Civil Rights Law § 70-a[1][a]).
2. Application of the anti-SLAPP law to this case
As a threshold matter, we note that the anti-SLAPP law does not have retroactive application. However, notwithstanding the commencement of this action prior to the 2020 amendments, the enhanced attorneys' fee remedy is available to defendants because plaintiffs continued their SLAPP action after the November 10, 2020 enactment date (see Gottwald v Sebert, 40 NY3d 240, 258 [2023]). The record in this action demonstrates that the conditions for dismissal and thus an award of attorneys' fees under the anti-SLAPP law were met.
(a) "Public interest"
The 2020 amendments now encompass claims based on public communications on matters of public interest, defined as "any subject other than a purely private matter" (Civil Rights Law § 76-a[1][d]). This first condition is readily met here.
Under the anti-SLAPP law, the term "public petition and participation" applies to "any communication in a place open to the public or a public forum in connection with an issue of public interest" (Civil Rights Law § 76-a[1][a][1]). The disputed news article was published on DailyMail.com, a news media website. This is a quintessential public forum (see Gillespie v Kling, 217 AD3d 566, 567 [1st Dept 2023] ["A podcast is a public forum"]; Aristocrat Plastic Surgery P.C. v Silva, 206 AD3d [*7]26, 27, 31-32 [1st Dept 2022] [reviews posted on "public internet forums" subject to anti-SLAPP law]; Balliet v Kottamasu, 76 Misc 3d 906, 922 [Civ Ct, Kings County 2022] [news media website is "undoubtedly a public forum" under anti-SLAPP law], affd 2023 NY Slip Op 51297[U] [App Term 2d Dept 2023]).
In order to fulfill the anti-SLAPP law's stated purpose of protecting public petition and participation, the 2020 amendments provide that "public interest" shall be broadly construed to embrace "matters of political, social, or other concern to the community" (Aristocrat, 206 AD3d at 29). Manifestly, this includes allegations of domestic violence, as reported in the online article (see Gillespie, 217 AD3d at 567). Matters of public interest also include judicial proceedings (see Omansky v Tribeca Citizen LLC, 2022 NY Slip Op 32883[U], *9 [Sup Ct, NY County 2022]) and allegations of criminal conduct (see Hayt v Newsday, LLC, 176 AD3d 787 [2d Dept 2019]), which are likewise referenced in the news story. On appeal, plaintiffs have abandoned any argument that the news article does not concern matters of public interest.
(b) "Substantial basis"
Defendants have met their initial burden. The burden now shifts to plaintiffs to demonstrate that the claims have a "substantial basis."
The term "substantial basis" is not defined in the anti-SLAPP law and otherwise has no single recognized meaning.[FN4]
We therefore look to extrinsic interpretive aids (see Matter of Action Elec. Contrs. Co. v Goldin, 64 NY2d 213, 221 [1984]). The sponsor's memorandum in support of the original 1992 enactment states that the law "would change the standard for obtaining attorneys' fees . . . by requiring that an action be supported by a 'substantial' basis, which is more support than the 'reasonable' basis required in other actions" (L 1992, ch 767, Bill Jacket at 8). The sponsor's reference appears to reflect the award of attorneys' fees as the sanction for frivolous conduct operative in 1992.
Supreme Court found that the complaint here is not frivolous. That finding was one of its reasons for declining to award attorneys' fees under CPLR 3211(g) and Civil Rights Law § 70-a. Accepting Supreme Court's finding that the complaint is not frivolous, the question still remains whether the complaint's failure to state a claim under CPLR 3211(a)(7) also means that it lacks a substantial basis under CPLR 3211(g).
The standard governing frivolous pleadings [FN5]
is more lenient than the CPLR 3211(a)(7) standard for failure to state a claim. Many complaints are dismissed for failing to state a claim; very few of these are found to be frivolous. "Simply because a complaint fails to state a claim upon which relief may be granted does not mean that it is frivolous" (Spencer v Doe, 139 F3d 107, 111 [2d Cir 1998]). Stated differently, an action that lacks merit is not necessarily frivolous. Similarly, an action that is not frivolous is not necessarily meritorious.
The 1992 act's legislative history [*8]suggests a floor — that "substantial basis" is something more than a "reasonable" basis — but does not establish the height of that floor. Similarly, the legislative history underlying the 2020 amendments fails to clarify the meaning of "substantial basis." Nor do the relatively few cases applying the 1992 version offer any definitive construction of the "substantial basis" standard. One court did hold that the 1992 version of CPLR 3211(g) set a higher standard than under an ordinary CPLR 3211(a)(7) motion to dismiss, but failed to explain how much higher, and the issue was not addressed on appeal (see 161 Ludlow Food, LLC v L.E.S. Dwellers, Inc., 60 Misc 3d 1221[A], 2018 NY Slip Op 51201[U], *4-5 [Sup Ct, NY County 2018], affd 176 AD3d 434 [1st Dept 2019]).
Legislative history and existing caselaw fail to shed direct light on the meaning of "substantial basis," other than to indicate that substantial basis is more than frivolous and more than the ordinary CPLR 3211(a)(7) standard. Using this metric, if "substantial basis" under CPLR 3211(g) is a more rigorous standard than the CPLR 3211(a)(7) standard, does a complaint which fails to state a claim also lack a "substantial basis" (see 215 W. 84th St Owner LLC v Bailey, 217 AD3d 488, 488-489 [1st Dept 2023])? We answer this question affirmatively.
A careful reading of CPLR 3211 reveals that the phrase "substantial basis in law" appears both in CPLR 3211(g) and in CPLR 3211(h). Construction of the term "substantial basis" under CPLR 3211(h) thus informs the meaning of the same term under CPLR 3211(g) (see People v Bolden, 81 NY2d 146, 151 [1993]; Matter of Marx v Bragalini, 6 NY2d 322, 329 [1959]).
CPLR 3211(h) was added in 1996 (see L 1996, ch 682), four years after the first enactment of the anti-SLAPP law, as a means of protecting architects and certain other professionals from old claims which might accrue decades after the professional work was completed (see Vincent C. Alexander, McKinney's Cons Laws of NY, CPLR 214-d, Practice Commentary C214-d:1). The 1996 act created a new CPLR 214-d, which established a 90-day notice of claim requirement for injuries occurring as a result of work performed by a professional more than 10 years earlier. The 1996 act also added a new CPLR 3211(h) and 3212(i). These two subsections mirrored the 1992 anti-SLAPP law's "substantial basis" burden-shifting procedures already present in CPLR 3211(g) and 3212(h).
Critically, the sponsor's memorandum for the 1996 act, which codified CPLR 3211(h) and CPLR 3211(i), serves as a springboard for deciphering the meaning of "substantial basis" in CPLR 3211(g):
"The 'substantial basis' standard is intended to mean such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact. It is intended to be less than a 'preponderance of the evidence standard.' (see 300 Gramatan Avenue Associates v State Division of Human Rights, 45 NY2d 176 [1978])."
(L 1996, ch 682, Bill Jacket at 13 [case [*9]citation in original].) 300 Gramatan Ave., the 1978 case cited in the 1996 act's legislative history, is a leading decision on the meaning of "substantial evidence," the standard employed in judicial review of administrative determinations made subsequent to an evidentiary hearing (300 Gramatan Ave., 45 NY2d at 179). The precise language in the sponsor's 1996 memorandum referring to "substantial basis" — "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" — is the very same definition of "substantial evidence" articulated by the Court of Appeals in 300 Gramatan Ave. (id. at 180). Through this embedment, the Legislature indicated that the familiar "substantial evidence" standard should be utilized as the benchmark in determining whether a claim has a "substantial basis" under CPLR 3211(h) (Castle Vil. Owners Corp. v Greater N.Y. Mut. Ins. Co., 58 AD3d 178, 183 [1st Dept 2008] [Lippman, P. J.] ["a fair inference to be drawn from the legislative history is that CPLR 3211(h) was intended to heighten the court's scrutiny of the complaint and thereby make it easier to dismiss a CPLR 214-d action than other types of negligence actions"] [internal quotation marks omitted]; see e.g. Golby v N & P Engrs. & Land Surveyor, PLLC, 185 AD3d 792, 793-794 [2d Dept 2020]).
CPLR 3211(g) and (h) are sister parts of the same statute. We would be remiss in finding that the Legislature would employ the same phrase twice in the same statute but intend for it to have different meanings. Logically, "[i]n the absence of anything in the statute indicating an intention to the contrary, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout" (McKinney's Consol Laws of NY, Statutes § 236). The legislative history underlying the 2020 amendments gives no indication that the Legislature intended to update the phrase. Hence, it must be concluded that the phrase "substantial basis" as used in CPLR 3211(g) means the same as it does in CPLR 3211(h) (see Smartmatic USA Corp. v Fox Corp., 213 AD3d 512, 512 [1st Dept 2023] [applying substantial evidence standard in CPLR 3211(g) case to determine that claims failed to establish substantial basis]).
While the Legislature's intention to "import the substantial evidence standard" as the measure of the "substantial basis" standard is clear (Castle Village, 58 AD3d at 183), we caution that this should not mean that caselaw applying "substantial evidence" in the article 78 context may be applied unreservedly in CPLR 3211 cases when questions of "substantial basis" arise. One critical distinguishing factor is that the article 78 "substantial evidence" standard is applied in review of quasi-judicial determinations following an evidentiary hearing (see CPLR 7803[4]; Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757 [1991]). By contrast, CPLR 3211(g) provides for no evidentiary hearing[*10].[FN6]

In applying the "substantial basis" standard, it may be helpful to use the practical test that we applied in Castle Village: "whether the allegations and evidence presented would require submission to a jury as a question of fact" (Castle Village, 58 AD3d at 183, citing 300 Gramatan Ave., 45 NY2d at 181). Procedurally, the "substantial evidence" standard has been equated with the ordinary summary judgment standard, in that each seeks to determine whether there are triable issues of material fact (compare Brill v City of New York, 2 NY3d 648, 651 [2004] [summary judgment standard] with 300 Gramatan, 45 NY2d at 181 [substantial evidence]; see e.g. Matter of Bradley Corporate Park v Crotty, 39 AD3d 632, 634 [2d Dept] ["substantial evidence" requires evidentiary showing "roughly that needed for a court to submit a question of fact to a jury"], lv denied 9 NY3d 816 [2007]).
In this context, the CPLR 3211(g) motion is analogous to an accelerated summary judgment motion, albeit within the context of an anti-SLAPP action, claim, or cross-claim. As enhanced by the 2020 amendments, CPLR 3211(g) contemplates an adjudication based upon the submission of affidavits (see CPLR 3211[g][2]), with special provision for discovery upon an application by the party opposing the CPLR 3211(g) m0tion. This unique discovery provision, exclusive to CPLR 3211(g), is tailored to aid a party summon "facts essential to justify its opposition" to an anti-SLAPP action, claim, cross-claim or counterclaim (CPLR 3211[g][3]) and thereby show a substantial basis for their claims.
We note that the "substantial basis" standard applicable under CPLR 3211(g) is more exacting than the liberal pleading standard applicable to ordinary CPLR 3211(a)(7) motions. Under the CPLR 3211(a)(7) standard, the question is whether a cognizable cause of action is manifested, presuming the complaint's factual allegations to be true, and according the pleading the benefit of every possible favorable inference (see Doe v Bloomberg, L.P., 36 NY3d 450, 454 [2021]; Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001]). By contrast, a court reviewing the sufficiency of a pleading under CPLR 3211(g) must look beyond the face of the pleadings to determine whether the claim alleged is supported by substantial evidence (see Castle Village, 58 AD3d at 183).
For these reasons, a complaint which fails to state a claim under CPLR 3211(a)(7) necessarily lacks a "substantial basis in law" for purposes of CPLR 3211(g) (see 215 W. 84th St, 217 AD3d at 488-489 ["the action was 'without a substantial basis in fact and law,' as demonstrated by the court's dismissal of the complaint for failure to state a claim"]).[FN7]

Here, the complaint must be dismissed for failure to state a claim. Plaintiffs failed to show that their claims have a substantial basis; they cannot state a claim or raise an issue of triable fact. It should further be noted that plaintiffs never sought to avail themselves of the evidence-gathering framework [*11]set out in CPLR 3211(g). Specifically, plaintiffs never requested any tailored discovery, pursuant to CPLR 3211(g)(3), to obtain facts which might be necessary to support their opposition.
Plaintiffs had ample opportunity to seek to buttress their claims. The 2020 amendments were enacted on November 10, 2020. Three days later, on November 13, 2020, defendants moved to dismiss plaintiffs' complaint and for an award of costs and attorneys' fees, pursuant to CPLR 3211(a)(1), 3211(a)(7), and 3211(g) and Civil Rights Law §§ 70-a and 76-a. Plaintiffs were promptly placed on notice, since defendants in their motion highlighted the recent amendments by correctly asserting that they took effect "immediately."
Nonetheless, in opposition papers submitted in February 2021, plaintiffs passed up the opportunity to demonstrate a "substantial basis" under CPLR 3211(g). Instead, plaintiffs argued that CPLR 3211(g) did not apply at all, maintaining that nothing in the disputed article was a matter of public interest (a position which they abandon on appeal). Plaintiffs proffered no alternative argument or analysis under CPLR 3211(g). Instead, plaintiffs confined their substantive argument to CPLR 3211(a). Plaintiffs charted their own procedural course and cannot now complain (see Matter of Garayua v New York City Police Dept., 68 NY2d 970, 972 [1986]).
Lastly, by choosing to argue that CPLR 3211(g) had no application, plaintiffs shaped the record as a CPLR 3211(a) motion to dismiss on the pleadings. Accordingly, Supreme Court did not articulate any analysis expressly directed at whether plaintiffs' claim had a substantial basis in law under CPLR 3211(g) and restricted its substantive analysis to CPLR 3211(a). In any event, their failure to meet the CPLR 3211(a) standard necessarily establishes their failure to meet the higher CPLR 3211(g) standard.
Plaintiffs' failure to meet their burden under CPLR 3211(g) entitles defendants to attorneys' fees pursuant to Civil Rights Law § 70-a[1][a] (see Golan v Daily News, L.P., 214 AD3d 558, 559 [1st Dept 2023]). We therefore remand this action for further proceedings for the limited purpose of determining the amount of defendants' attorneys' fees. We note that, upon remand, the calculation of attorneys' fees awarded in the instant action should begin as of November 10, 2020, the effective date of the 2020 amendments (see Gottwald, 40 NY3d at 259).
Accordingly, the order 0f the Supreme Court, New York County (Phillip Hom, J.), entered on or about August 5, 2021, which granted defendants Associated Newspapers Ltd. and Anneta Konstantinides's motion to dismiss the complaint, pursuant to CPLR 3211(a)(1) and (7), should be modified, on the law, to grant defendants' motion, pursuant to CPLR 3211(g), and the matter remanded for further proceedings in accordance herewith, and otherwise affirmed, without costs.
All concur except Webber, J.P., and Oing, J. who concur in a
separate Opinion by Oing, J.

Oing, J., (concurring),[*12]
 

I agree with the majority's conclusion that defendants are entitled to an award of attorneys' fees pursuant to CPLR 3211(g). I respectfully have a different basis to support that conclusion. This appeal provides us with the opportunity to set forth the analysis needed to dispose of a CPLR 3211(g)(1) motion, which provides:
"A motion to dismiss based on paragraph seven of subdivision (a) of this section, in which the moving party has demonstrated that the action, claim, cross claim or counterclaim subject to the motion is an action involving public petition and participation as defined in paragraph (a) of subdivision one of section seventy-six-a of the civil rights law, shall be granted unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law. The court shall grant preference in the hearing of such motion."
On appeal, plaintiffs have abandoned any argument that the complaint did not involve a matter in the public sphere. Thus, defendants have satisfied their initial burden under CPLR 3211(g)(1). The burden shifts to plaintiffs to demonstrate that the claims pleaded have a substantial basis in law.
Defendants argue that plaintiffs are unable to satisfy their burden because the motion court dismissed the action pursuant to CPLR 3211(a)(7). Generally, a CPLR 3211(a)(7) dismissal of a complaint is indicative that the action is without a substantial basis (see 215 W. 84th St. Owner LLC v Bailey, 217 AD3d 488 [1st Dept 2023]). Here, had the motion court dismissed this action without more, I would find defendants' argument to be dispositive and they would be entitled to an award of attorneys' fees pursuant to CPLR 3211(g). However, that was not the case. As noted by the majority, the motion court in dismissing the action pursuant to CPLR 3211(a)(7) held that the alleged defamatory statements were protected by the fair report privilege and that the tort claims were legally deficient on their face. The motion court, however, made the additional findings that the action was commenced under a cognizable legal theory and, that, although plaintiffs' arguments opposing the pre-answer dismissal motion were not persuasive, the action was not frivolous. Under these circumstances, I respectfully believe that the majority's reliance on the CPLR 3211(a)(7) dismissal to determine substantial basis to be misplaced and that further consideration is required of the issue of whether plaintiffs have demonstrated a substantial basis in law for their claims. I also believe that the better practice would be for Supreme Court to analyze a CPLR 3211(g) motion regardless of whether a CPLR 3211(a)(7) is granted or denied.
We have had occasion to define "substantial basis in law" as that which requires "'such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact'" (Smartmatic USA [*13]Corp. v Fox Corp., 213 AD3d 512, 512 [1st Dept 2023], quoting Golby v N&P Engrs. & Land Surveyor, PLLC, 185 AD3d 792, 793-794 [2d Dept 2020]). Thus, a CPLR 3211(g) application compels a higher degree of judicial scrutiny of the complaint's allegations in order to award attorneys' fees, where such an award is not generally imposed in a CPLR 3211(a) context. If the court finds no substantial basis for the claims, then they must be dismissed under CPLR 3211(g), and under the new anti-SLAPP law a defendant is entitled to attorneys' fees and costs (Civil Rights Law §§ 70-a, 76-a). If the court, however, finds that substantial basis does exist, then the motion is denied (see Smartmatic USA Corp. v Fox Corp., 213 AD3d at 512-513 [finding that the "meticulously detailed complaint satisfied the requirements of CPLR 3211(g)(1)" and thus affirmed Supreme Court's denial of certain defendant's motion to dismiss and reinstated additional causes of action for defamation]). For these reasons, and contrary to the majority's analysis, I, respectfully, do not believe that the substantial evidence standard, which is an appellate standard of review of a judicial determination made after an evidentiary hearing in an article 78 proceeding, should be utilized by Supreme Court in resolving the substantial basis question at the pleading stage. I also view respectfully the majority's approach as unnecessarily conflating CPLR 3211(g), which addresses a pleading's sufficiency, with CPLR 3212(h), which implicates summary disposition in the absence of factual issues. Indeed, CPLR 3211(c), which provides for summary disposition in the CPLR 3211 context, is limited to applications under subdivision (a) or (b), and is not applicable to subdivision (g). The question that remains is whether plaintiffs have demonstrated that their claims have a substantial basis under Smartmatic. The record is sufficient to resolve the issue because plaintiffs never requested CPLR 3211(g)(3) discovery as part of their opposition to defendants' motion dismiss. Nor did they argue on appeal that more discovery was needed for them to demonstrate a substantial basis for their pleaded claims.
Turning to the tort claims, the record establishes that they are legally insufficient. Reeves' claims for negligent and intentional infliction of emotional distress were correctly dismissed as duplicative of his defamation claims (see Fleischer v NYP Holdings, Inc., 104 AD3d 536, 538-539 [1st Dept 2013], lv denied 21 NY3d 858 [2013]; Akpinar v Moran, 83 AD3d 458, 459 [1st Dept 2011], lv denied 17 NY3d 707 [2011]). Further, defendants' alleged conduct did not amount to extreme and outrageous conduct (see Seymour v Hovnanian, 211 AD3d 549, 557 [1st Dept 2022]; Parker v Trustees of the Spence Sch., Inc., 205 AD3d 459, 460 [1st Dept 2022]). Reeves' cause of action for prima facie tort was also duplicative of the defamation claim (see Matthaus v Hadjedj, 148 AD3d 425, 426 [1st Dept 2017]; Fleischer, 104 AD3d at 538-539). [*14]The prima facie tort claim, insofar as asserted by Consolidated, fails because the basis of the tort, the alleged defamatory statements made about its CEO, were not "of and concerning" Consolidated (Three Amigos SJL Rest., Inc. v CBS News Inc., 28 NY3d 82, 86-87 [2016]; see also Cohn v National Broadcasting Co., 67 AD2d 140, 146 [1st Dept 1979], affd 50 NY2d 885 [1980], cert denied 449 US 1022 [1980]). Consolidated's claims for tortious interference with contract and prospective economic advantage fail on their face as the complaint did not plead the requisite elements, including defendants' knowledge of its business relationships and/or contracts with third parties (see Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1996]; Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 47 [1st Dept 2009], lv dismissed 14 NY3d 736 [2010]). Concerning the defamation claim, the alleged defamatory statements published by defendants in an online news article reporting on the contentious divorce and child custody battle between Reeves and his estranged wife Michelle were privileged under Civil Rights Law § 74. The statute provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." Defendants' article provided a substantially accurate reporting of Reeves' arrests for domestic violence and related criminal proceedings, and the defamation action brought by Reeves against Michelle and others, during the divorce and custody proceedings (see Alf v Buffalo News, Inc., 21 NY3d 988, 990 [2013]; Holy Spirit Assn. for Unification of World Christianity v New York Times Co., 49 NY2d 63, 67 [1979]). The minor inaccuracies in the article did not remove the protection of the fair reporting privilege (see Misek-Falkoff v American Lawyer Media, 300 AD2d 215, 216 [1st Dept 2002], lv denied 100 NY2d 508 [2003], cert denied 541 US 939 [2004]). Additionally, the article contained substantially true statements based on defendants' review of text messages written and sent by Reeves, as well as audio and video recordings of Reeves (see Gondal v New York City Dept. of Educ., 19 AD3d 141, 142 [1st Dept 2005]; Chinese Consol. Benevolent Assn. v Tsang, 254 AD2d 222, 223 [1st Dept 1998]). Notably, although, as Reeves contends, the bare bones affidavits submitted by Michelle in the divorce and custody proceedings were insufficient to authenticate the texts and recordings (cf. Muhlhahn v Goldman, 93 AD3d 418, 419 [1st Dept 2012]), he did not deny the authenticity of the messages or audio and video recordings in his affidavit submitted in opposition to defendants' motion to dismiss this action (see Chinese Consol. Benevolent Assn., 254 AD2d at 223). Lastly, the headline was a fair index of the substantially accurate contents of the article[*15](see Gunduz v New York Post Co., 188 AD2d 294 [1st Dept 1992]; Cole Fischer Rogow, Inc. v Carl Ally, Inc., 29 AD2d 423, 426 [1st Dept 1968], affd 25 NY2d 943 [1969]). Because plaintiffs' arguments do not rebut this record evidence, they have failed to demonstrate under Smartmatic that their complaint is "meticulously detailed" to satisfy the substantial basis requirement of CPLR 3211(g)(1).[FN8]

Order, Supreme Court, New York County (Phillip Hom, J.), entered on or about August 5, 2021, modified, on the law, to grant defendants' motion, pursuant to CPLR 3211(g), and the matter remanded for further proceedings in accordance herewith, and otherwise affirmed, without costs.
Opinion by González, J. All concur except Webber, J.P., and Oing, J.,
who concur in a separate Opinion by Oing, J.
The Decision and Order of this Court entered herein on April 09, 2024 is hereby recalled and vacated (see M-2024-2756 decided simultaneously herewith). 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 22, 2024

Footnotes

Footnote 1:The 202o amendments left unchanged the burden-shifting set forth in CPLR 3212(h), which applies to CPLR 3212 summary judgment motions brought by SLAPP suit defendants. CPLR 3212(h) closely mirrors CPLR 3211(g)(1), in that, upon a showing by the movant that the action involves public petition or participation, the burden of proof shifts to the plaintiff to show that the claim has a substantial basis in fact and law.

Footnote 2:The anti-SLAPP law provides for recovery of compensatory and punitive damages (see Civil Rights Law § 70-a[1][b]-[c]). These provisions are not at issue here.

Footnote 3:CPLR 3211(g)(2)-(4) state:
"2. In making its determination on a motion to dismiss made pursuant to paragraph one of this subdivision, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the action or defense is based. No determination made by the court on a motion to dismiss brought under this section, nor the fact of that determination, shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.
"3. All discovery, pending hearings, and motions in the action shall be stayed upon the filing of a motion made pursuant to this section. The stay shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and upon a showing by the nonmoving party, by affidavit or declaration under penalty of perjury that, for specified reasons, it cannot present facts essential to justify its opposition, may order that specified discovery be conducted notwithstanding this subdivision. Such discovery, if granted, shall be limited to the issues raised in the motion to dismiss.
"4. For purposes of this section, 'complaint' includes 'cross-complaint' and 'petition', 'plaintiff' includes 'cross-complainant' and 'petitioner,' and 'defendant' includes 'cross-defendant' and 'respondent.'

Footnote 4:The term is found perhaps most often in the context of Family Court determinations, which are upheld where supported by a "sound and substantial basis in the record" (e.g. Lubit v Lubit, 65 AD3d 954, 955 [1st Dept 2009], lv denied 13 NY3d 716 [2010], cert denied 560 US 940 [2010]). This is not controlling here, where the context is different.

Footnote 5:Frivolous conduct is defined as conduct that is completely devoid of merit and which cannot be supported by a reasonable "extension, modification or reversal of existing law" (22 NYCRR 130-1.1[c][1]).

Footnote 6:If the CPLR 3211(g) nonmovant does not show that its claims are supported by a "substantial basis," then those claims are dismissed. If the nonmovant makes out a "substantial basis," then the action continues, as any other post-CPLR 3211 motion case would. Notably, the survival of a nonmovant's claims in this regard has no law of the case or preclusive effect (see CPLR 3211[g][2]).

Footnote 7:As the concurrence notes, Supreme Court held that the complaint was not frivolous, but nonetheless did not state a claim. In our view, this means that although plaintiffs surpassed the low standard of nonfrivolousness, they did not meet the lenient CPLR 3211(a)(7) standard, or the higher "substantial basis" standard under CPLR 3211(g). In this context, meeting the nonfrivolous standard is of no avail.

Footnote 8:Plaintiffs' concern that granting CPLR 3211(g) relief would give defendants carte blanche in the defamation arena is overstated. Judicial scrutiny of the public participation and substantial basis factors are sufficient safeguards against that concern.